IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CONSTANTINE ANGELOPOULOS,     )
                            )
                            )           2:19-CV-01578-CCW
         Plaintiff,         )
                            )
       v.                     )
                            )
HDR ENGINEERING, INC.,          )
                            )
                            )
         Defendant.      )
                            )

## OPINION

Before the Court is Defendant HDR Engineering, Inc.'s Motion for Summary Judgment, ECF No. 45, and HDR's Motion to Strike Section VIII of Plaintiff's Opposition, ECF No. 54. Because the Court concludes that Plaintiff Constantine Angelopoulos has not met his burden of producing evidence to show pretext, HDR's Motion for Summary Judgment will be GRANTED. Furthermore, because the Court will grant summary judgment in HDR's favor, HDR's Motion to Strike will be DENIED AS MOOT.

I.       **Background**

       A.      **Procedural History**

Mr. Angelopoulos filed his Complaint—which asserts discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (Count I) and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951, *et seq.* (Count II)—on December 9, 2019. *See* ECF No. 1. In it, he also asserts that HDR's alleged adverse action against him constituted (1) unlawful retaliation and (2) constructive discharge. *See id.* at ¶ 17.

On October 23, 2020, the case was transferred to the undersigned. *See* ECF No. 35. Thereafter, the parties completed fact discovery and HDR filed its Motion for Summary Judgment. *see* ECF Nos. 34, 45. Plaintiff submitted a Brief in Opposition, ECF No. 50, and HDR then filed its Motion to Strike a portion of Plaintiff's Opposition. *See* ECF No. 54. Both of HDR's Motions have been fully briefed and are now ripe for disposition.

### B.   Plaintiff's Rule 56(d) Application is Without Merit

Before summarizing the undisputed material facts relevant to HDR's Motion for Summary Judgment, two procedural points must be addressed. First, in the final section of his Opposition to HDR's Motion for Summary Judgment, Plaintiff asserts—not for the first time in this case— that HDR failed to provide timely and complete responses to certain discovery requests and, as a result, HDR's Motion for Summary Judgment should be denied and discovery reopened pursuant to Federal Rule of Civil Procedure 56.[1] *See* ECF No. 50 at 15–18. According to Plaintiff, the Court denied his prior Motion to Compel on this issue, ECF No. 42, "as untimely without consideration of circumstances other than the untimeliness without regard to fault or merit." *Id.* at 15. Plaintiff's account of the litigation of these discovery issues is, however, incomplete at best. The Court's November 17, 2020, Memorandum Opinion and Order, *see* ECF No. 43, which sets forth fully the reasoning for the denial of Plaintiff's Motion to Compel, concluded that, in light of repeated failures to adhere to applicable discovery deadlines or abide by the Court's directives and Practices & Procedures, Plaintiff had not demonstrated that "more diligent pursuit [of discovery]

---

[1] Although not cited as such in Plaintiff's Opposition, he appears to rely on Rules 56(d) and (e). Section VIII of his Opposition is titled "Pursuant to Federal Rule of Civil Procedure 56 If Plaintiff Has Not Received Information Necessary to Properly Defend A Motion for Summary Judgment Then The Motion Should Be Denied." ECF No. 50 at 15. This appears to paraphrase Rule 56(d). Plaintiff later argues that "[p]ursuant to Federal Rule of Civil Procedure 56 if a party fails to properly address another party's assertion of the fact the Court may consider the other party's assertion as undisputed, provide an opportunity to address or issue any other appropriate order." This, on the other hand, is almost a word-for-word restatement of Rule 56(e). In light of what the Court understands Plaintiff's argument to be—that he lacks information necessary to adequately respond to HDR's Motion for Summary Judgment—we will address this portion of his Opposition as making an application under Rule 56(d).

was impossible," *Trask v. Olin Corp*., 298 F.R.D. 244, 268 (W.D. Pa. 2014), and therefore failed to make the requisite showing of good cause necessary to warrant modifying the Court's scheduling order and reopening discovery.  *See id.* at 6;  *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

Thus, while it is true "that district courts usually grant properly filed requests for discovery under Rule 56(d) 'as a matter of course,'" *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (quoting *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309-10 (3d Cir. 2011), the same is not true where the Rule 56(d) request fails to submit an appropriate affidavit or declaration in compliance with Rule 56(d).  *See id.* (citing *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (finding the affidavit insufficient because it did not specify what discovery was needed or why it had not previously been secured).  Here, no such affidavit or declaration has been filed. Plaintiff attempts to frame his Concise Counterstatement as an affidavit;  however, even if it is a proper affidavit (which HDR disputes), *see* ECF No. 56 at 1 n.1, it fails to set forth either (1) what discovery is needed or (2) why it was not previously secured.   Section VIII of Plaintiff's Opposition, in which he sets forth his Rule 56(d) request, does not appear or purport to be any kind of affidavit or declaration.  By itself, then, Plaintiff's failure to comply with Rule 56(d)'s "affidavit or declaration" requirement renders his request for additional discovery procedurally defective. *See Bradley v. United States,* 299 F.3d 197, 207 (3d Cir. 2002) (explaining that failure to comply with Rule 56(d) is fatal to a claim of insufficient discovery "in all but the most exceptional cases."). Furthermore, Plaintiff fails to provide any cogent explanation for why he was unable to secure the information he claims is essential to defend against HDR's Motion for Summary Judgment during the discovery period.  *See Koplove*, 795 F.2d at 18 (finding that party making request under Rule 56(d) "has an obligation to provide the court with a record which affirmatively demonstrates, with

specificity, diligent efforts on his or her part [to obtain the requested discovery] and unusual circumstances which have frustrated those efforts.").

This is because Plaintiff cannot demonstrate such "diligent efforts." *Id.* Discovery deadlines in this case were originally set on March 31, 2020, with discovery set to close on August 31, 2020. *See* ECF No. 43 at 1. United States Magistrate Judge Lisa Pupo Lenihan, then-presiding, held a telephonic status conference on August 4, 2020, with counsel for HDR reporting that written discovery had been served on Plaintiff and that Mr. Angelopoulos' deposition had been scheduled. *See id.* Counsel for Mr. Angelopoulos failed to attend. *See id.* Next, Plaintiff's counsel did not serve Mr. Angelopoulos' First Set of Interrogatories and Request for Production of Documents until August 11, 2020—more than four months after the discovery deadline was set and less than three weeks before the close of discovery. *See id.* at 1–2. After obtaining a 60-day extension of the discovery period (to October 30, 2020) and being advised that no further extensions would be granted, Mr. Angelopoulos' counsel again failed to diligently pursue discovery, only alerting the Court and HDR on November 2, 2020—after the close of discovery—of certain alleged deficiencies in HDR's production. *See id.* at 2–3. When the Court provided Plaintiff's counsel with direction on how to proceed in resolving the alleged dispute, Mr. Angelopoulos' counsel again failed to comply with the Court's Practices and Procedures, instead filing the prior Motion to Compel, which the Court denied, with prejudice, on November 17, 2020, for the reasons stated above. *See id.* at 3. Accordingly, like with the prior Motion to Compel, the Court concludes that Plaintiff cannot carry his burden of demonstrating why the requested discovery could not have been secured earlier, and the Court will not grant Plaintiff relief under Rule 56(d).

### C.      Plaintiff Has Failed to Properly Support or Address Assertions of Fact Relevant to Deciding HDR's Motion for Summary Judgment

Second, Plaintiff's Response to Defendant's Concise Statement of Material Facts, ECF No.

51, and his own Concise Counterstatement of Material Facts, ECF No. 52, fail almost entirely to

properly contest or support any material fact at issue here as disputed or undisputed.  *See* Fed. R.

Civ. P. 56(c)(1) (requiring party asserting or disputing fact to either cite to materials in the record

or show the materials cited do not establish presence or absence of genuine factual dispute).  The

Western District of Pennsylvania's Local Rules specifically require a party opposing a motion for

summary judgment to file a responsive concise statement of material fact which responds to each

numbered paragraph in the movant's concise statement by (1) admitting or denying the facts

asserted in the movant's concise statement;  (2) setting forth the basis for any denial, to the extent

a fact is not admitted entirely, with appropriate citation to the record; and (3) setting forth, in

separately numbered paragraphs, any other material facts at issue.  *See* LCvR 56(C)(1).  Courts in

this district "require strict compliance with the provisions of Local Rule 56."  *Mattis v. Overmeyer*,

Case No. 1:16-cv-00306, 2019 U.S. Dist. LEXIS 103193, at *6 (W.D. Pa. June 20, 2019)

(collecting cases).  A non-moving party "faces severe consequences for not properly responding

to a moving party's concise statement," namely, that any fact claimed to be undisputed in the

moving party's concise statement "'will for the purpose of deciding the motion for summary

judgment be deemed admitted unless specifically denied or otherwise controverted by a separate

concise statement of the opposing party.'" *Hughes v. Allegheny Cty. Airport Auth*., Civil Action

No. 15-221, 2017 U.S. Dist. LEXIS 103819, at *2 (W.D. Pa. July 6, 2017) (quoting LCvR 56.E).

Here, Plaintiff's Response to Defendant's Concise Statement, ECF No. 51, except for ¶ 1,

lodges the same boilerplate objection—that testimony from Richard Atoulikian, HDR's Rule

30(b)(6) corporate designee, is inadmissible hearsay—to each fact asserted by HDR and then either

admits the fact or denies it without any citation to the record. *See, generally,* ECF No. 51. However, Plaintiff's objection is meritless because, even if Mr. Atoulikian's testimony contained, in relevant portions, hearsay statements, such testimony properly may be considered at summary judgment if it could be presented in admissible form at trial. *See Shelton v. Univ. of Med. & Dentistry,* 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."). Thus, the Court agrees with HDR that, to the extent Mr. Atoulikian's testimony was based on information gleaned from other employees rather than personal knowledge, HDR may call those employees to testify at trial or present the information in some other admissible form (*e.g.* by introducing relevant documents or other business records). *See* ECF No. 57 at 2.

On the other hand, Plaintiff's own Concise Counterstatement, ECF No. 52, fails to adequately support many of its assertions of facts with appropriate citations to the record. *See, e.g.,* ECF No. 56 at ¶¶ 2.E–L.

Accordingly, the Court will consider as undisputed for the purpose of resolving HDR's Motion for Summary Judgment (1) the facts asserted in HDR's Concise Statement, except to the extent a properly supported fact asserted in Plaintiff's Concise Counterstatement is to the contrary and (2) properly supported facts asserted by Plaintiff in his Concise Counterstatement which HDR does not dispute. *See* Fed. R. Civ. P. 56(e)(2) (permitting a court, where a fact is not properly supported or disputed, to "consider the fact undisputed for the purposes of the motion"); *see also* LCvR 56.E; *EEOC v. United States Steel Corp.*, Civil Action No. 10-1284, 2013 U.S. Dist. LEXIS 22748, at *4 n.1 (W.D. Pa. Feb. 20, 2013) ("To the extent that [plaintiff] fails to either admit or deny these facts [in defendant's concise statement], they will be deemed admitted.") (citing LCvR 56.E).

### D.     Undisputed Material Facts

HDR is a design and engineering firm "which handles projects throughout the country and overseas and that it has design centers across the country, including in Raleigh, North Carolina and in Ann Arbor, Michigan."  *See* ECF No. 5 (HDR's Answer).  Mr. Angelopoulos was hired by HDR in 2006 as a "Senior Electrical Engineer."  ECF No. 46 at ¶ 1.  He was 64 years old when hired and was assigned to the Pennsylvania Industrial Practice Group.  *See id.*  Mr. Angelopoulos remained in that position until the summer of 2015 when HDR's East Region Industrial Client Development Leader resigned, taking much of the group's work with him.  *Id.* at ¶¶ 2–3.  Shortly thereafter, most of the Pennsylvania Industrial Practice Group, except for Mr. Angelopoulos, also resigned.  *Id.* at ¶ 3.  HDR then reassigned Mr. Angelopoulos to its Pennsylvania Water Business Group, where Mr. Angelopoulos remained until his resignation on March 2, 2018.  *Id.* at ¶ 4.

HDR hired David Watson in April 2015 as a Senior Electrical Engineer into its Kentucky Water Business Group, replacing another electrical engineer who had recently resigned.  *Id.* at ¶¶ 11–13.  Mr. Watson is younger than Mr. Angelopoulos.  *See* ECF No. 53-3 at 7 (HDR's response to Mr. Angelopoulos' interrogatories, noting David Watson was born in 1971).  Although Mr. Watson reported to HDR's Kentucky department in Lexington at the time of his hiring, he was physically based in Columbus, Ohio.  *See* ECF No. 46 at ¶¶ 14–15.  Upon hiring, Mr. Watson was the only Senior Electrical Engineer in the Kentucky department;  as such, he immediately took on all of the ongoing projects in that region, including some for clients with whom he had a relationship predating his hiring by HDR.  *Id.* at ¶ 15.

As relevant here, at the time of Mr. Watson's hiring, HDR's Water Business Group consisted of two separate geographic departments:  Pennsylvania and Kentucky.  *Id.* at ¶ 5.  The Pennsylvania department included Pennsylvania, West Virginia, and Northeast Ohio, whereas the Kentucky department included Central and Southwest Ohio, Kentucky, and Tennessee.  *Id.*  In

December 2015, HDR reorganized its Water Business Group, restructuring the Pennsylvania and Kentucky departments into one department, so that it had the same structure as HDR's Transportation Group. *Id.* at ¶¶ 16–18. Following the reorganization, HDR's Pennsylvania Water Business Group included Pennsylvania, West Virginia, Ohio and Kentucky. *Id.* Like the rest of the employees in the former Kentucky Water Business Group, Mr. Watson was assigned to the restructured Pennsylvania Water Business Group. *Id.* at ¶ 19.

Thus, following the restructuring in December 2015, HDR had two senior electrical engineers in its Pennsylvania Water Business Group, Mr. Angelopoulos (based in Pittsburgh) and Mr. Watson (based in Columbus). *Id.* at ¶ 20. Mr. Angelopoulos and Mr. Watson continued, by and large, to work independently following the restructuring: Mr. Angelopoulos generally worked on Pennsylvania projects while Mr. Watson worked on Ohio and Kentucky projects. *Id.* at ¶ 21. Mr. Watson and Mr. Angelopoulos did work together on projects on occasion. For example, Mr. Atoulikian, who serves as Vice President/Northeast Client Service Manager and oversaw the restructured Pennsylvania Water Business Group, *see id.* at ¶ 18, brought Mr. Watson in to assist on the "detailed design phase" of the Cleveland-based "Second Stage Lift Project" due to increased project scope and compressed timelines set by the client. *Id.* at ¶¶ 22–24. Similarly, Mr. Angelopoulos performed quality review work on some of Mr. Watson's projects. *Id.* at ¶ 26.

An important measure HDR uses to evaluate its employees is utilization, a "metric that measures the amount of time employees spend on billable client projects versus non-billable administrative work that is not charged to a client." *Id.* at ¶¶ 29–30. Because utilization has an impact on HDR's bottom line, the company sets utilization goals for its employees and its managers track utilization closely. *Id.* at ¶ 31–32.

In 2016 and 2017, Mr. Angelopoulos' utilization goal was 85%, meaning HDR expected him to spend 34 hours per week (out of 40) on billable projects. *Id.* at ¶ 36. In 2016, Mr. Angelopoulos fell just short of his target, maintaining a utilization rate of 82%. *Id.* at ¶ 37. However, electrical engineering work from HDR's Pennsylvania clients slowed through 2017, and Mr. Angelopoulos' utilization had dropped to 42% by year-end. *Id.* at ¶¶ 38, 43. Electrical engineering work in Mr. Watson's region, on other hand, remained steady and Mr. Watson continued to meet or exceed his utilization target of 85% *Id.* at ¶ 39; *see also* ECF No. 56 at ¶ 2.T.

Seeing Mr. Angelopoulos' utilization steadily decline, his supervisors pursued work for him outside of his geographical region and outside of the Water Business Group. ECF No. 46 at ¶ 40. Although they were able to find Mr. Angelopoulos some additional work, his utilization still did not return to his target level. *Id.* at 42. On September 17, 2017, after nearly a year of falling short of his utilization goal, HDR reduced Mr. Angelopoulos' hours from 40 to 32 per week. *Id.* at ¶ 44. He retained the same utilization goal of 85%, meaning that his weekly billable requirement was reduced to 27.2 hours. *Id.* at ¶ 45. When, however, Mr. Angelopoulos' utilization did not improve—by February 2018 he was only billing 15 hours a week to client projects—and with HDR unable to find sufficient additional work for him, HDR decided to again reduce Mr. Angelopoulos' hours, this time from 32 to 20 per week. *Id.* at ¶¶ 49–50, 52. Also in February 2018, HDR reduced the hours of a structural engineer in the Pennsylvania Water Business Group, Michael Paine (age 56), from 40 to 32, also because of sub-target utilization rates. *Id.* at ¶¶ 51–52.

HDR communicated the reduction from 32 to 20 hours to Mr. Angelopoulos in a meeting on March 2, 2018. *Id.* at ¶ 53. This reduction moved Mr. Angelopoulos to part-time, hourly status and would have resulted in a loss of benefits. *Id.* at ¶ 56; *see also* ECF No. 55 at 3 (HDR agreeing

that March 2018 Reduction "would have resulted in a loss of benefits."). At the same time, HDR informed Mr. Angelopoulos that he would be moved from his private office to a cubicle. ECF No. 46 at ¶ 56. This move was made (1) to free up office space for a newly hired Client Manager; (2) because Mr. Angelopoulos would not be working full time; and (3) because Senior Electrical Engineers typically did not have private offices. *Id.* at ¶¶ 54–56.

Mr. Angelopoulos resigned from HDR on March 4, 2018. *Id.* at ¶ 58. In his resignation letter, Mr. Angelopoulos did not complain about any alleged age discrimination. *Id.* at ¶¶ 59–60. Indeed, Mr. Angelopoulos never complained of alleged discrimination or differential treatment based on age until he filed his charge with the EEOC on August 10, 2018. *Id.* at ¶¶ 59–61. Of note, when HDR first reduced Mr. Angelopoulos' hours from 40 to 32 in September 2017, Mr. Angelopoulos informed some of his colleagues that the change was "just right," in part because it allowed him to have a three-day weekend. *Id.* at ¶ 46.

## II.    Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue,* 666 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc*., 814 F.2d 893, 896 (3d Cir. 1987)).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence;  there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

## III.   Discussion

As noted above, Mr. Angelopoulos' Complaint asserts two claims:  discrimination on the basis of age in violation of (1) the ADEA (Count I) and (2) the PHRA (Count II).  HDR has moved

for summary judgment in its favor on both counts.  Because the United States Court of Appeals for the Third Circuit "has determined that the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," the Court will address the claims together. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both.")).

### A.  Legal Framework

"The ADEA prohibits employers from 'discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Willis,* 808 F.3d at 643–44 (3d Cir. 2015) (quoting 29 U.S.C. § 623(a)(1)).  A plaintiff in an ADEA case must establish, by a preponderance of the evidence, that age was the "but-for" cause of the complained-of adverse employment action.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  To prove such claims, a plaintiff may rely on either direct or circumstantial evidence of discrimination. Where, as here, a plaintiff relies on circumstantial evidence, courts apply the familiar *McDonnell Douglas* burden-shifting framework.  *See Willis* 808 F.3d at 644 (citing *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (reaffirming the application of a "slightly modified version of [*McDonnell Douglas*] in ADEA cases")).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by pointing to evidence supporting the following elements:  (1) the plaintiff is at least forty years old;  (2) the plaintiff was qualified for the position in question;  (3) the plaintiff suffered an adverse employment action;  and (4) the plaintiff was ultimately replaced by someone sufficiently younger so as to support an inference of discrimination.  *See Burton,* 707 F.3d at 426. "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can

provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Producing evidence sufficient to satisfy the elements of a prima facie case creates an "inference of unlawful discrimination," *Pivirotto*, 191 F.3d at 357, which an employer must then rebut at the next step of the *McDonnell Douglas* analysis by "articulat[ing] a legitimate nondiscriminatory reason for the adverse employment action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999) (citing *Keller*, 130 F.3d at 1108.  To meet its burden, "the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If the employer meets its burden at the second step, "[t]he third step in the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426–27 (citing *Fuentes*, 32 F.3d at 764–65).  To make this showing of pretext and defeat summary judgment, a plaintiff must point to evidence that would allow a factfinder to reasonably either:  "'(1) disbelieve the employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* at 427 (quoting *Fuentes*, 32 F.3d at 764).

## B.    Any Claim Based on the September 2017 Reduction is Untimely

As a threshold matter, to seek relief under the ADEA a plaintiff must first exhaust his or her administrative remedies, as provided by 29 U.S.C. § 626(d).  *See Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 111 (3d Cir. 2014).  Under that provision, a plaintiff in a so-called "deferral" state, such as Pennsylvania, must file his charge with the EEOC within 300 days of the alleged unlawful

employment action.  *Id.*  Claims that are not timely filed with the EEOC fail as a matter of law.  *Id.* (noting that "[a] plaintiff's obligation to timely file with the EEOC is a condition precedent to filing suit under the ADEA.") (citation omitted).

It is undisputed that Mr. Angelopoulos' hours were first reduced from 40 hours per week to 32 hours per week on September 17, 2017, and that Mr. Angelopoulos did not file his charge with the EEOC until August 10, 2018.  *See* ECF No. 46 at ¶ 44;  ECF No. 47-7 (Mr. Angelopoulos' EEOC Charge).  Because August 10, 2018 was more than 300 days after the alleged violation on September 17, 2017, any claim based on that alleged adverse action is time-barred.  *See O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir. 2006) (individually actionable discriminatory acts "must be raised within the applicable limitations period or they will not support a lawsuit.") (citing *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002)).  Furthermore, Plaintiff does not argue for, nor do there appear to be any facts in the record sufficient to support, application of either equitable tolling or the "single filing rule."  *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383–386 (3d Cir. 2007).  Therefore, Mr. Angelopoulos' claims based on the September 2017 reduction, will be dismissed with prejudice for failure to exhaust administrative remedies.

### C.    Mr. Angelopoulos Has Not Raised a Triable Issue of Fact Regarding HDR's Proffered Justification for the March 2018 Reduction

With respect to the March 2018 reduction in Mr. Angelopoulos' hours, HDR argues that Mr. Angelopoulos cannot meet his burden to establish a prima facie case of age discrimination because (1) the reduction from 32 to 20 hours per week was not an adverse employment action and (2) his alleged comparator, David Watson, was not similarly situated to Plaintiff such that an inference of discrimination can be drawn.  *See* ECF No. 48 at 5–8.  HDR also argues that even if Mr. Angelopoulos can establish a prima facie case of age discrimination, he cannot meet his burden at step three of the *McDonnell Douglas* analysis with respect to showing pretext.  *See id.* at 8–12.

### 1. Prima Facie Case

The Court finds that Mr. Angelopoulos has established a prima facie case of employment discrimination. HDR does not challenge the first and second elements of the prima facie case; that Mr. Angelopoulos was over 40 years old at the time of the alleged adverse action and is qualified for the position of senior electrical engineer. *See* ECF No. 46 at ¶ 1 (noting that Mr. Angelopoulos was 64 years old when hired as a Senior Electrical Engineer in 2006); *see also* ECF No. 56 at ¶¶ 1.B and 1.E.

With respect to the third element of the prima facie case, HDR argues that merely reducing Mr. Angelopoulos' hours did not constitute an adverse employment action. However, the March 2018 reduction would have (1) moved Mr. Angelopoulos from salaried to hourly status; (2) resulted in a reduction in his compensation; and (3) caused HDR to terminate Mr. Angelopoulos' benefits. *See* ECF No. 55 at 3 ("Defendant does not dispute that the reductions took place, that the second reduction *would have* resulted in a loss of benefits had Plaintiff not voluntarily resigned…") (emphasis original). Accordingly, the Court concludes that there is sufficient evidence in the record for a reasonable jury to conclude that Mr. Angelopoulos suffered an adverse employment action. *See Pinskey v. Michaels Stores, Inc.*, Civil Action No. 2:15-cv-0184, 2016 U.S. Dist. LEXIS 168788, at *13 (W.D. Pa. Dec. 7, 2016) (noting that actions including those that result in "a significant change in benefits" or "a demotion from full-time to part-time can constitute adverse employment action under Third Circuit precedent.") (citations omitted) (collecting cases).

HDR also argues that Mr. Angelopoulos cannot satisfy the fourth and final element of a prima facie case of age discrimination because Mr. Watson, his purported replacement and comparator, although younger, was not similarly situated to Mr. Angelopoulos such that an inference of discrimination can be drawn. *See* ECF No. 48 at 7–9. In short, HDR contends that, despite being comparable across several relevant dimensions, Mr. Angelopoulos and Mr. Watson

were not similarly situated here because, unlike Mr. Angelopoulos, Mr. Watson consistently met his utilization targets. *Id.* at 8. According to HDR, "[i]n Plaintiff's case, a true comparator would be an engineer who was consistently failing to meet his or her utilization targets but for whom HDR did not reduce hours." *Id.*

HDR's argument, however, is unavailing at this stage of the analysis. To satisfy the fourth element of his prima facie case of age-based discrimination—which the Supreme Court has said "is not onerous," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)—Mr. Angelopoulos must make "some showing of disparate and age-based treatment, either through more favorable treatment of younger workers, or by some other means." *Chase v. Frontier Commc'ns. Corp.*, 361 F.Supp.3d 423, 436 (M.D. Pa. 2019). Here, Mr. Angelopoulos and Mr. Watson shared the same job title, performed the same kind of work, were both part of the Water Business Group, and reported to the same supervisor, Mr. Atoulikian. *See* ECF No. 46 at ¶¶ 1, 13, 18, 20. And, importantly, where the comparison between the two breaks down—i.e. that Mr. Angelopoulos did not meet his utilization targets while Mr. Watson did, *see* ECF No. 46 at ¶¶ 39, 43—is itself the evidence Mr. Angelopoulos points to as supporting his claim that HDR treated Mr. Watson, the younger worker, more favorably. *See* ECF No. 50 at 2. That is, according to Mr. Angelopoulos, HDR gave Mr. Watson work to keep him fully occupied, while Mr. Angelopoulos' utilization rate steadily declined. *See id.*

This seeming preference for the younger employee over the older employee in work assignments is sufficient at this stage of the analysis to satisfy the fourth element of Mr. Angelopoulos' prima facie case. As such, the Court concludes that there is sufficient evidence in the record at summary judgment to create an inference of age discrimination. *See Willis*, 808 F.3d

at 644 ("Satisfying the prima facie elements creates an 'inference of unlawful discrimination.'")
(quoting *Pivirotto*, 191 F.3d at 357).

### 2.      Legitimate Non-Discriminatory Reason

Next, the Court concludes that HDR has met its burden of production at step two of the
*McDonnell Douglas* analysis by coming forward with evidence supporting its proffered legitimate,
non-discriminatory reason for reducing Mr. Angelopoulos' hours.  "This burden is 'relatively
light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion
that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at
426 (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

HDR claims that it reduced Mr. Angelopoulos' hours "because he failed to meet his
utilization target for two years" and because "[i]t was HDR's hope that this reduction in hours (and
in [Mr. Angelopoulos'] billable hour requirement) would assist Plaintiff in meeting his utilization
goal by year-end."  ECF No. 48 at 9.  Indeed, HDR points to evidence that, in addition to reducing
Mr. Angelopoulos' hours, HDR management "worked to find work for Plaintiff outside his region
and outside of the Water Business Group."  ECF No. 46 at ¶ 40.  Furthermore, it is uncontested
that HDR reduced the hours of another engineer who was (1) significantly younger than Mr.
Angelopoulos and (2) also not meeting his utilization targets around the time of Mr. Angelopoulos'
March 2018 reduction.  *See* ECF No. 46 at ¶¶ 51–52 (noting that HDR reduced the hours of
Michael Paine (56 years old) from 40 to 32 per week).  According to HDR these moves were made
not on the basis of age, but for business considerations because "[u]tilization is a metric that
measures the amount of time employees spend on billable client projects versus non-billable
administrative work that is not charged to a client" and, therefore, employee utilization has a direct
impact on "HDR's bottom line."  *Id.* at ¶¶ 30–31.  The Court therefore concludes that HDR has

articulated a legitimate, non-discriminatory reason for reducing Mr. Angelopoulos' hours in March 2018.

### 3. Pretext

Finally, at the last step of the *McDonnell Douglas* analysis, Mr. Angelopoulos must point to evidence that would either (1) allow a factfinder to disbelieve HDR's proffered legitimate nondiscriminatory reason for taking adverse action or (2) allow a fact finder to believe that unlawful discrimination was more likely than not the reason for the employer's action. *See Willis*, 808 F.3d at 644–645.

To meet his burden under the first method, a plaintiff's evidence "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence."'" *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765). Thus, "[t]o discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. The second method of proving pretext, on the other hand, requires a plaintiff "to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." *Willis*, 808 F.3d at 644. This evidence should have "'sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that age was a motivating or determinative factor.'" *Id.* (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 644–645 (3d Cir. 1998)). Here, Plaintiff cannot make either showing.

At the outset, the Court notes that Mr. Angelopoulos' reliance on the comparison between his treatment and Mr. Watson's treatment by HDR is insufficient, on its own, to meet his burden

of coming forward with evidence sufficient to raise a triable issue of fact as to whether HDR's legitimate, non-discriminatory reason for reducing his hours was pretextual. *See Simpson*, 142 F.3d at 645–646 (recognizing that "[a] decision adversely affecting an older employee does not become a discriminatory decision merely because one younger employee is treated differently…The ultimate inquiry is whether the decision was motivated by the affected employee's age.") (citations omitted). At the pretext stage of the analysis, it is no longer sufficient for a plaintiff to simply point to evidence of a younger employee receiving more favorable treatment; rather, to survive summary judgment, a plaintiff must point to evidence that would allow a reasonable jury to conclude that the employer's proffered non-discriminatory justification is not credible or that impermissible discrimination was the real reason for the adverse action.

To that end, the Court finds that Mr. Angelopoulos has not pointed to evidence sufficient to either discredit HDR's proffered justification or allow a factfinder to conclude that the March 2018 hours reduction was motivated by age discrimination. In short, Mr. Angelopoulos' attempt to rebut HDR's proffered justification for the March 2018 reduction rests on little more than Mr. Angelopoulos' personal belief that there "could be no other reason" for the hours reduction but age discrimination. ECF No. 46 at ¶ 62 (quoting deposition of Mr. Angelopoulos).

In Mr. Angelopoulos' version of events, Mr. Watson was "hired to replace Plaintiff;" as such, Mr. Angelopoulos points to evidence he suggests supports his theory that work that "should have been his was "given" to Mr. Watson. *See* ECF No. 50 at 2, 10–11. According to Mr. Angelopoulos, this was a deliberately done by HDR to cause him to miss his utilization goal and provide a justification for reducing his hours. For example, Mr. Angelopoulos argues that, had Mr. Watson not been assigned to assist on the Second State Lift Project, those hours would have

gone to Mr. Angelopoulos, improving his utilization.  *See* ECF No. 56 at ¶¶ 2.O–P;  ECF No. 50 at 14.

The problem with this argument is that it is not supported by evidence that either discredits any reason offered by HDR for any of its actions or would allow a reasonable factfinder to infer that the March 2018 reduction was motivated by age discrimination.  Mr. Angelopoulos offers no reason or evidence to support why, with two senior electrical engineers in the Pennsylvania division, it was impermissible for HDR to assign work to Mr. Angelopoulos and Mr. Watson based principally on geography—i.e., with Mr. Watson taking the bulk of the work originating in Kentucky and Ohio, while Mr. Angelopoulos took on Pennsylvania projects—rather than some other method.  Whether or not such a distribution of work was wise or prudent, the mere fact that HDR *could* have allocated work differently between Mr. Watson and Mr. Angelopoulos, without more, does nothing to discredit HDR's proffered justification for the March 2018 reduction—lack of work—nor does it support the conclusion that age discrimination was the real reason for Mr. Angelopoulos' hours being cut.  Indeed, even where Mr. Angelopoulos points to HDR seeming to directly "give" Mr. Watson work at Mr. Angelopoulos' expense—the Second Stage Lift Project— he has not pointed to any evidence that undermines HDR's stated reasons for the move:  two engineers were needed for the "detailed design phase" because the (1) scope of the project expanded and (2) the client's timeline shortened.

Lacking any evidence to show pretext, Mr. Angelopoulos' subjective belief that the March 2018 hours reduction was motivated by age discrimination is insufficient to survive summary judgment.  *See Ekhato v. Rite Aid Corp.,* 529 Fed. Appx. 152, 155 (3d Cir. 2013) ("[Plaintiff's] subjective belief that the decision to terminate her employment was discriminatory is insufficient"

to show pretext) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999)).  As such, HDR's Motion for Summary Judgment will be granted with respect to the March 2018 reduction.

### D.     Mr. Angelopoulos Cannot Point to Facts Necessary to Support a Viable Retaliation Claim

Next, as HDR notes in its Reply, *see* ECF No. 55 at 4–5, Mr. Angelopoulos' belated attempt to assert a claim for retaliation in his opposition to HDR's Motion for Summary Judgment fails for multiple reasons.  To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, a plaintiff must show "'(1) [that he engaged in] protected employee activity;  (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'"  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

First, Mr. Angelopoulos did not assert a retaliation claim in his charge with the EEOC;  as such, Mr. Angelopoulos failed to exhaust his administrative remedies with respect to such a claim. *See* ECF No. 47–7.  Second, although Mr. Angelopoulos asserts in his Complaint that the hours reductions constituted retaliation, *see* ECF No. 1 at ¶ 17, he does not allege that he ever engaged in any protected conduct with respect to age and only pleads claims for disparate treatment discrimination under the ADEA and PHRA.  *See id.* at Count I (Age Discrimination, ADEA) and Count II (Age Discrimination, PHRA).  Indeed, Mr. Angelopoulos conceded during his deposition that, prior to his resignation, he never complained to anyone at HDR that he believed age discrimination was behind the reductions in his hours:

> Q.     So did you complain to anyone at the company that you felt
>         this decision was based on your age?
> A.     Are you talking for the November reduction?
> Q.     Yes.
> A.     No.
> Q.     Did you hire a lawyer?

A.     No.

ECF No. 53-3 at 59:17–25; *see also* ECF No. 51 at ¶ 61 (admitting that "at no point until the filing of his EEOC Charge did Plaintiff ever allege or complain that he believed any of HDR's decisions were based on his age."). So, even if the Court were to conclude that Mr. Angelopoulos did not fail to exhaust his administrative remedies and did not fail to plead a claim for retaliation in his Complaint, his admission that he never complained about any purported age-based discrimination is fatal to any purported claim for unlawful retaliation. That is, absent some protected conduct on the part of the plaintiff—which can include as little as informal complaints to management—there can be no claim for retaliation. *See, e.g.*, *Daniels* 776 F.3d at 193–94 (discussing protected activity as the first prong of a prima facie claim for retaliation). Accordingly, because Mr. Angelopoulos cannot point to evidence sufficient to raise a triable issue of fact with respect to any purported retaliation claim, any such claim will be dismissed with prejudice.

### E.     Mr. Angelopoulos Cannot Point to Facts Sufficient to Support a Claim for Constructive Discharge

Next, HDR argues, and the Court agrees, that Mr. Angelopoulos cannot point to facts sufficient to support any claim that "he was forced to quit his job due to the reduction in his hours and the loss of his office." ECF No. 48 at 12 (citing ECF No. 1 at ¶ 17 ("The same conduct also constituted sufficient reason for Plaintiff's constructive termination.")).

Courts in the Third Circuit "employ an objective test to determine whether an employee can recover on a claim of constructive discharge." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (quoting *Duffy v. Paper Magic Group, Inc*., 265 F.3d 163, 167 (3d Cir. 2001)). Therefore, at summary judgment, the Court must determine "whether 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1075

(3d Cir. 1996) (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)).

Because "the law does not permit an employee's subjective perceptions to govern a claim of

constructive discharge," *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992), "an

employee claiming to have been constructively discharged must demonstrate that the conduct of

which he complains 'surpasse[d] a threshold of intolerable conditions.'" *Wiest v. Tyco Elecs.*

*Corp.*, 812 F.3d 319, 331 (3d Cir. 2016) (quoting *Suders v. Easton*, 325 F.3d 432, 444 (3d Cir.

2003)).

 Here, Mr. Angelopoulos' claim for constructive discharge fails because he cannot point to

facts from which a reasonable fact-finder could conclude that he was subjected to discriminatory

conditions, let alone discriminatory conditions that were so intolerable that "a reasonable person

would have felt compelled to resign." *Colwell*, 602 F.3d at 502. Indeed, Mr. Angelopoulos

admitted that no one at HDR ever attributed the hours reductions, loss of benefits, or loss of his

office to his age. *See* ECF No. 46 at ¶¶ 60–61. Furthermore, during his deposition, Mr.

Angelopoulos conceded that no one at HDR ever subjected him to age-based comments. *See* ECF

No. 53-3 at 92:8–25. Viewing the facts in the light most favorable to Mr. Angelopoulos, a

reasonable fact-finder could not conclude that he was subjected to discriminatory conditions so

intolerable that he was forced to resign.

### F. HDR's Motion to Strike Will Be Denied as Moot

 Finally, HDR's Motion to Strike seeks to have Section VIII of Mr. Angelopoulos'

Opposition—the section, addressed above, which sets out Mr. Angelopoulos' Rule 56(d) request—

stricken under Rule 12(f) as "redundant," because it attempts to re-litigate Mr. Angelopoulos'

previously denied Motion to Compel, and because it is "impertinent and immaterial to Plaintiff's

Opposition and also scandalous because it challenges Defendant's integrity and truthfulness

throughout the discovery process." ECF No. 54 at ¶ 19. Because the Court has already addressed

Mr. Angelopoulos' Rule 56(d) request, *see* Section I.B, *supra*, and because the Court will grant HDR's Motion for Summary Judgment in full, HDR's Motion to Strike will be denied as moot.

**IV.      Conclusion**

For the foregoing reasons, Defendant HDR Engineering, Inc.'s Motion for Summary Judgment will be GRANTED IN FULL.  Accordingly, final judgment will be entered in its favor and Plaintiff Constantine Angelopoulos' Complaint will be DISMISSED.  Finally, HDR's Motion to Strike will be denied as MOOT.

DATED this 20th day of July, 2021.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge



cc (via ECF email notification):

All Counsel of Record